UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BOAT OWNERS ASSOCIATION OF
THE UNITED STATES,

    Plaintiff,

v.     Case No: 2:15-cv-197-FtM-29CM

FLAGSHIP TOWING LLC and
CHRISTOPHER B. RILEY,

    Defendants.
_____

**OPINION AND ORDER**

This matter comes before the Court on review of Plaintiff's Motion to Dismiss Defendants' Counterclaim Count II and to Strike Defendants' First, Second, Sixth, and Seventh Affirmative Defenses (Doc. #42) filed on July 10, 2015. Plaintiff filed a Response (Doc. #44) on July 22, 2015. For the reasons set forth below, the motion is granted in part and denied in part.

**I.**

Plaintiff Boat Owners Association of the United States (BoatUS) has filed a five-count Complaint (Doc. #1) against Defendants Flagship Towing LLC (Flagship) and Christopher B. Riley (Riley) alleging trademark infringement and deceptive and unfair trade practices. The underlying facts, as set forth in the Complaint, are as follows:

BoatUS is a corporation organized under the laws of the District of Columbia with its principle place of business in Alexandria, Virginia. (Id. at ¶ 3.) BoatUS provides fuel, maintenance, on-water towing, and other boating products and services. (Id. at ¶ 11.) BoatUS paints its fleet of towing and service boats in a color scheme consisting of a red background with white diagonal stripes near the bow and white lettering aft of the stripes (the BoatUS Mark). (Id. at ¶ 13.) In 2000, the U.S. Patent & Trademark Office issued to BoatUS the federal trademark registration number 2,356,475 for use of the BoatUS Mark in connection with "boat towing services; providing on the water assistance to boaters by the delivering of gasoline and other supplies by boat; [and] salvaging and towing disabled vehicles." (Id. at ¶ 14.)

Flagship is a corporation organized under the laws of the State of Texas with its principal place of business in Leander, Texas. (Id. at ¶ 4.) In 2012, BoatUS became aware that Flagship was offering boat towing services using boats painted in a manner confusingly similar to the BoatUS Mark. (Id. at ¶ 17.) BoatUS demanded that Flagship change its paint scheme, but Flagship refused. (Id. at ¶ 18.) Riley is the sole director and member of Flagship, and directed and controlled Flagship's allegedly-infringing conduct. (Id. at ¶¶ 5, 9.)

Based on these allegations, BoatUS brings causes of action against Flagship and Riley for trademark infringement in violation of the Lanham Act, false designation of origin in violation of the Lanham Act, common law trademark infringement, violations of the Florida Deceptive and Unfair Trade Practices Act, and unfair competition. Flagship and Riley filed separate Answers, Affirmative Defenses, and Counterclaims (Docs. ##34, 36) on June 19 and June 26, 2015. BoatUS now moves to strike Defendants' First, Second, Sixth, and Seventh Affirmative Defenses[1] and to dismiss Count II of Defendants' Counterclaim.

## II.

### A. Motion to Dismiss Counterclaim Count II

Defendants Counterclaim contains three counts. Count I seeks a declaratory judgment that Defendants have not infringed upon the BoatUS mark, Count II alleges that BoatUS has violated the Florida Deceptive and Unfair Trade Practices Act (FDUTPA), and Count III alleges that Defendants are entitled to recover their attorneys' fees and costs incurred in defending this lawsuit. BoatUS moves to dismiss Count II, arguing that it fails to state a claim upon

---

[1] Although Defendants each assert the same seven affirmative defenses, they are not numbered identically. To avoid confusion, the Court will refer to the relevant affirmative defenses as they are numbered in Flagship's Answer (Doc. #34). Flagship's First, Second, Sixth, and Seventh Affirmative Defenses correspond to Riley's First, Second, Fifth, and Sixth Affirmative Defenses.

which relief can be granted. Defendants respond that Count II is adequately pled.

Counterclaims, like claims for relief in a complaint, must contain a short and plain statement showing an entitlement to relief, and the statement must give the opposing party fair notice of what the claim is and the grounds upon which it rests. Fed. R. Civ. P. 8(a)(2); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A motion to dismiss a counterclaim under Fed. R. Civ. P. 12(b)(6) is evaluated in the same manner as a motion to dismiss a complaint. Whitney Info. Network, Inc. v. Gagnon, 353 F.Supp.2d 1208, 1210 (M.D. Fla. 2005); Fabricant v. Sears Roebuck, 202 F.R.D. 306, 308 (S.D. Fla. 2001).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89, 94 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzaín, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations

omitted).  Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

FDUTPA declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).  ("An unfair practice is one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." Herrera v. JFK Med. Ctr. Ltd. P'ship, No. 14-CV-2327, 2015 WL 730039, at *5 (M.D. Fla. Feb. 20, 2015) (quoting Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)).)  FDUTPA defines "trade or commerce" as "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203(8).  Conduct occurring during the exercise of a legal remedy—including filing a lawsuit or issuing pre-suit demand letters—cannot give rise to a FDUTPA claim because the pursuit of a legal remedy does not fall within FDUTPA's

5

definition of "trade or commerce." Baker v. Baptist Hosp., Inc., 115 So. 3d 1123, 1124 (Fla. 1st DCA 2013) (collecting cases).

In support of their FDUTPA counterclaim, Defendants allege three separate instances of unfair business practices committed by BoatUS: (1) that during the pendency of this case, BoatUS has sought and utilized Flagship's services on multiple occasions; (2) that BoatUS filed this action in an attempt to disrupt Flagship's business; and (3) that BoatUS has waived its trademark claims. (Doc. #34, pp. 11-12.) BoatUS argues that these allegations, even if proven, could not support a finding that BoatUS violated FDUTPA. The Court agrees.

As explained above, seeking legal remedies does not fall within FDUTPA's definition of "trade or commerce." Baker, 115 So. 3d at 1124. Accordingly, Flagship's allegations concerning BoatUS's motive for filing this lawsuit cannot support a FDUTPA claim. Likewise, Defendants' allegations that BoatUS waived its trademark claims cannot support a FDUTPA claim because Defendants do not allege that BoatUS's waiver was an unfair method of competition or an unconscionable business practice. What remains are Flagship's allegations that BoatUS sought and utilized Flagship's services on multiple occasions while this lawsuit was pending. While these allegations, and the supporting invoices attached as exhibits (Doc. #36-1, Ex. D), are sufficient to establish that BoatUS contracted with Flagship, the Counterclaim

6

contains no allegations suggesting that BoatUS acted in an "immoral, unethical, oppressive, unscrupulous or substantially injurious" manner while doing so.  To the contrary, the exhibits attached to the Counterclaim suggest a run-of-the-mill contractual relationship in which BoatUS paid Flagship for services rendered.  (Id.)  Accordingly, the Court concludes that Defendants' FDUTPA counterclaim must be dismissed for failure to state a claim upon which relief can be granted.  Defendants will be granted leave to amend.

**B.   Motion to Strike Affirmative Defenses**

Under Fed. R. Civ. P. 12(f), "the Court may order stricken from any pleading any insufficient defense or redundant, immaterial, impertinent, or scandalous matter."  Courts disfavor motions to strike and deny them unless the allegations have "no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party."  Reyher v. Trans World Airlines, 881 F. Supp. 574, 576 (M.D. Fla. 1995).  "An affirmative defense is generally a defense that, if established, requires judgment for the defendant even if the plaintiff can prove his case by a preponderance of the evidence."  Wright v. Southland Corp., 187 F.3d 1287, 1303 (11th Cir. 1999). Affirmative defenses must follow the general pleading requirements contained in Rule 8 of the Federal Rules of Civil Procedure.  A party must "state in short

and plain terms its defenses to each claim asserted against it." Fed. R. Civ. P. 8(b)(1)(A).

As with any pleading, an affirmative defense must provide "fair notice" of the nature of the defense and the grounds upon which it rests, Twombly, 550 U.S. at 555, and state a plausible defense, Iqbal, 556 U.S. at 679. Thus, "[w]hile an answer need not include a detailed statement of the applicable defenses, a defendant must do more than make conclusory allegations. If the affirmative defense comprises no more than bare bones conclusory allegations, it must be stricken." Microsoft Corp. v. Jesse's Computers & Repair, Inc., 211 F.R.D. 681, 684 (M.D. Fla. 2002) (internal quotations omitted). The purpose of this pleading requirement "is simply to guarantee that the opposing party has notice of any additional issue that may be raised at trial so that he or she is prepared to properly litigate it." Hassan v. U.S. Postal Serv., 842 F.2d 260, 263 (11th Cir. 1988).

### 1. Defendants' First Affirmative Defense

Defendants' First Affirmative Defense alleges that BoatUS's "objection to the use of the color red by Defendants" is contrary to public policy because "the color red may indicate safety and assistance" and because Defendants' business "is based upon providing safety assistance and service." (Doc. #34, p. 4.) In their Response to Plaintiff's motion, Defendants explain that the First Affirmative Defense argues that BoatUS cannot trademark its

8

use of the color red because red is commonly used to indicate safety vehicles and, as a result, BoatUS cannot demonstrate the "acquired distinctiveness" necessary to register a color mark. (Doc. #44, p. 4.) Thus, the First Affirmative Defense is actually a denial of Plaintiff's allegation that the BoatUS Mark is properly registered and encompasses BoatUS's use of the color red. Therefore, the Court will construe the First Affirmative Defense as a specific denial and it will not be stricken. Jirau v. Camden Dev., Inc., No. 8:11-CV-73, 2011 WL 2981818, at *2 (M.D. Fla. July 22, 2011) ("[W]hen a defendant labels a specific denial as a defense . . . the proper remedy is not to strike the claim, but instead to treat the claim as a specific denial.") (quoting FDIC v. Bristol Home Mortgage Lending, LLC, 2009 WL 2488302 at *3 (S.D. Fla. Aug. 13, 2009)).

   2. **Defendants' Second and Seventh Affirmative Defenses**

Defendants' Second Affirmative Defense alleges that "[t]his lawsuit is Plaintiff's attempt to restrict the commercial enterprises of Defendants, by controlling its appearance and ability to identify it to potential customers." (Doc. #34, p. 4.) Similarly, Defendants Seventh Affirmative Defense alleges that "Plaintiff is attempting to cause injury and damages to Defendant by making baseless allegations, by unreasonably attempting to restrain is commercial enterprises, by demanding that he expend large sums of money to comply with unreasonable demands, and by

using the courts to enforce those demands." (Doc. #34, p. 6.) In essence, these affirmative defenses allege that BoatUS is not bringing this case to enforce a valid trademark, but instead to restrict Flagship's business. Therefore, they are actually specific denials of BoatUS's allegation that Flagship is infringing upon the properly-registered BoatUS Mark. Accordingly, the Court will construe the Second and Seventh Affirmative Defenses as a specific denials and they will not be stricken.

### 3. **Defendants' Sixth Affirmative Defense**

Defendants' Sixth Affirmative Defense alleges that BoatUS has "waived its right to sue" by "operating watercraft of different designs and colors than the BoatUS Mark . . . by contracting with Defendants to perform activities on its behalf . . . [and] by entering into discussions and agreeing to compromise colors and designs." (Doc. #34, pp. 5-6.) Flagship argues that the Sixth Affirmative Defense must be stricken because Defendants' allegations are insufficient to establish waiver.

As explained by the Eleventh Circuit:

> Waiver is either an intentional or voluntary relinquishment of a known right, or conduct giving rise to an inference of the relinquishment of a known right. Waiver requires the existence at the time of the alleged waiver of a right which may be waived, actual or constructive knowledge of that right, and the intention to relinquish that right. Waiver may be express or may be implied from conduct. For waiver to be implied for conduct, the acts, conduct or circumstances

10

> relied upon to show waiver must make out a clear case.

<u>Air Products & Chemicals, Inc. v. Louisiana Land & Exploration Co.</u>, 867 F.2d 1376, 1379 (11th Cir. 1989) (citations omitted). Defendants concede that BoatUS did not explicitly waive its trademark rights. Instead, Defendants argue that BoatUS implicitly waived those rights by (1) operating boats using design schemes different from the BoatUS Mark, (2) contracting with Flagship while the alleged infringement was ongoing, and (3) "agreeing to compromise colors and designs" for Flagship's boats. Taking these allegations together and accepting them as true, the Court concludes that they are sufficient to plausibly establish that BoatUS intended to relinquish its right to sue for trademark infringement.  Accordingly, BoatUS's motion to strike the Sixth Affirmative is denied.

Accordingly, it is now

**ORDERED:**

1. Plaintiff's Motion to Dismiss Defendants' Counterclaim Count II and to Strike Defendants' First, Second, Sixth, and Seventh Affirmative Defenses (Doc. #42) is **GRANTED IN PART and DENIED IN PART**.

2. Count II of Defendants' Counterclaim is dismissed without prejudice to filing an Amended Counterclaim within **FOURTEEN (14) DAYS** of this Opinion and Order.

11

    3.    The motion is otherwise **DENIED**.

**DONE AND ORDERED** at Fort Myers, Florida, this <u>  28th  </u> day of July, 2015.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies: Counsel of record